United States District Court
Southern District of Texas
**ENTERED**
August 31, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIMBERLY KJESSLER, individually and on behalf of all others similarly situated, | § § § § | Lead CASE NO. 4:18-cv-430 |
| Plaintiff, | § § | **MEMORANDUM AND ORDER APPOINTING INTERIM LEAD COUNSEL** |
| v. | § § | |
| ZAAPPAAZ, INC. d/b/a WB Promotions, Inc., d/b/a Wrist-band.com, d/b/a Customlanlayrd.net, *et al.*, | § § § § § | |
| Defendants. | § § § | |
| LAURA BRALEY, individually and on behalf of all others similarly situated, | § § § | CASE NO. 4:17-cv-3064 (consolidated) |
| v. | § § | |
| MASHNOON AHMED, *et al.*, | § § | |
| Defendants. | § § | |
| KLAIRE RUECKERT, individually and on behalf of all others similarly situated, | § § § | CASE NO. 4:17-cv-3607 (consolidated) |
| Plaintiff, | § § | |
| v. | § § | |
| ZAAPPAAZ, INC. d/b/a | § | |

| | | |
|---|---|---|
| WB Promotions, Inc., d/b/a<br>Wrist-band.com, d/b/a<br>Customlanlayrd.net, *et al.*,<br><br>    Defendants.<br>_____ | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| SUMMER LANG, individually<br>and on behalf of all others similarly<br>situated,<br><br>    Plaintiff,<br><br>v.<br><br>ZAAPPAAZ, INC. d/b/a<br>WB Promotions, Inc., d/b/a<br>Wrist-band.com, d/b/a<br>Customlanlayrd.net, *et al.*,<br><br>    Defendants.<br>_____ | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 4:18-cv-044<br>(consolidated) |
| TIMOTHY HAYDEN, individually<br>and on behalf of all others similarly<br>situated,<br><br>    Plaintiff,<br><br>v.<br><br>GENNEX MEDIA, LLC, *et al.*,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 4:18-cv-0883<br>(consolidated) |

## MEMORANDUM AND ORDER APPOINTING
## INTERIM LEAD COUNSEL

Currently before the Court in this consolidated antitrust case are competing

motions for designation of interim lead counsel pursuant to Rule 23 of the Federal

2

Rules of Civil Procedure. Plaintiffs Kimberly Kjessler, Klaire Rueckert, and Summer Lang (collectively, the "Kjessler Plaintiffs") have filed their Motion for Appointment of the Kjessler Trial Team as Interim Class Counsel (the "Kjessler Motion") [Doc. # 103], pursuant to which they seek the appointment of Fred Isquith of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as interim lead class counsel,[1] Warren T. Burns of Burns Charest LLP ("Burns Charest") as trial counsel,[2] and the law firms of Stoll Berne Lokting & Shlachter P.C. ("Stoll Berne"), Gustafson Gluek PLLC, and Levin Sedran & Berman LLP to serve on Plaintiffs' Steering Committee[3] (collectively, the "Kjessler Trial Team").

---

[1]  Lead counsel are "[c]harged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004).

[2]  Trial counsel "[s]erve as principal attorneys at trial for the group and organize and coordinate the work of the other attorneys on the trial team." *Id*.

  At oral argument, and by letter dated August 22, 2018 [Doc. # 121], Mr. Burns requested that he and Mr. Isquith be appointed interim co-lead counsel. As discussed in more detail hereafter, the Court also has considered this separate appointment request.

[3]  Committees of counsel, "[of]ften called steering committees, coordinating committees, management committees, executive committees, discovery committees, or trial teams. . . are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them

(continued…)

Plaintiff Timothy Hayden has filed a Motion to Appoint Susman Godfrey L.L.P. (the "Susman Firm") Interim Lead Counsel (the "Hayden Motion" and, together with the Kjessler Motion, the "Motions") [Doc. # 104], arguing that Barry Barnett of the Susman Firm should be appointed sole interim lead counsel in this case. The Kjessler Plaintiffs and Hayden filed notices of opposition with respect to the others' motion.[4]  The Court held oral argument on the Motions on August 15, 2018.[5]  After considering the parties' briefing and argument, all pertinent matters of record, and the applicable legal authorities, the Court **grants in part** the

---

(continued…)
representation in decision making. The court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately." *Id*.

[4]  *See* Plaintiff Timothy Hayden's Notice of Opposition [Doc. # 105]; Plaintiffs Kimberly Kjessler, Klaire Rueckert, and Summer Lang's Notice of Opposition [Doc. # 106].

According to Hayden, both Lang and Plaintiff Laura Braley support the Hayden Motion.  Hayden Motion [Doc. # 104], p. 14.  Although the Hayden Motion specifically notes Braley's support in two separate instances, there is no mention of support from Lang.  *See id*. at p. 1 ("Plaintiff Laura Braley agrees with that assessment and supports this motion."); *id*. at p. 10 ("The more comprehensive complaint in *Hayden*, as well as Wolf Haldenstein's arrangement with [Defendant] Casad and its co-defendants, also helped persuade plaintiffs' counsel in *Braley* to support Susman Godfrey as interim lead counsel.").  Indeed, Lang specifically is identified as one of the three "movants" bringing the Kjessler Motion, and Lang's counsel, Levin Sedran & Berman LLP, is part of the Kjessler Trial Team.  Accordingly, the Court concludes that Braley supports the Hayden Motion, but concludes that Lang does not, and instead supports the Kjessler Motion.

[5]  *See* Hearing Minutes and Order, dated August 15, 2018 [Doc. # 116].

4

Kjessler Motion and **denies** the Hayden Motion.

## I.     BACKGROUND

In August 2017, in connection with a broader investigation by the United States Department of Justice into direct online sellers of customized promotional products ("CPPs"), Defendants Zaappaaz, Inc. ("Zaappaaz"), Azim Makanojiya, Custom Wristbands, Inc. ("Custom Wristbands"), and Christopher Angeles ("Angeles") agreed to plead guilty before Judge Alfred H. Bennett of the United States District Court for the Southern District of Texas to price-fixing of CPPs, including customized silicone wristbands and lanyards, in violation of Section 1 of the Sherman Act.[6]

On August 30, 2017, Plaintiff Kjessler, represented by Wolf Haldenstein and Stoll Berne, filed the first nationwide antitrust class action against Defendants Zaappaaz, Makanojiya, Custom Wristbands, Angeles, Casad Company, Inc. ("Casad"), and Netbrands Media Corp. ("Netbrands") in the United States District Court for the District of Oregon. Kjessler's complaint was based in large part on Defendants Zaappaaz, Makanojiya, Custom Wristbands, and Angeles' agreement to plead guilty to price fixing in the criminal proceedings before Judge Bennett.

---

[6]     Defendants Zaappaaz and Makanojiya entered their guilty pleas in November of 2017. Defendants Custom Wristbands and Angeles entered their guilty pleas in December of 2017.

5

On September 8, 2018, Kjessler filed an amended complaint, adding Gennex Media, LLC ("Gennex") as a Defendant and pin buttons as an additional affected CPP product beyond silicone wristbands and lanyards.

On October 12, 2017, Plaintiff Braley, who is not represented by any member of the Kjessler Trial Team or the Susman Firm, filed the first complaint related to this case in the United States District Court for the Southern District of Texas.  In her complaint, Braley alleges the same antitrust injury, based on the same alleged price-fixing conspiracy, as Kjessler.  However, Braley's complaint named three Texas-based Defendants, Mashnoon Ahmed, Akil Kurji, Brandeco, L.L.C. ("Brandeco"), not identified in Kjessler's complaint.[7]

On October 26, 2017, Kjessler filed a Notice of Voluntary Dismissal in her case with respect to Defendant Casad [Doc. # 56].  The dismissal was without prejudice and, according to Kjessler, was the result of a tolling agreement with Casad pursuant to which Casad provided approximately 100,000 documents and other cooperation in the form of significant industry information pertaining to the

---

[7] Also in October 2017, Braley unsuccessfully moved the Judicial Panel on Multidistrict Litigation for centralization of all complaints relating to Defendants' alleged price-fixing conspiracy in the United States District Court for the Southern District of Texas.

6

other Defendants' conduct.[8]

On November 27, 2017, Plaintiff Rueckert, represented by Burns Charest, Wolf Haldenstein, and Gustafson Gluek PLLC, filed a complaint in the United States District Court for the Southern District of Texas related to the same antitrust conduct alleged in the *Kjessler* and *Braley* complaints against the same Defendants (except for Casad) named in Kjessler's complaint.[9] On January 8, 2018, Plaintiff Lang, represented by Kjessler Trial Team member Levin Sedran & Berman LLP, filed a third related complaint in the United States District Court for the Southern District of Texas alleging the same conduct identified in the *Kjessler*, *Braley*, and *Rueckert* complaints against the same Defendants named in Braley's complaint.

---

[8] Notwithstanding Kjessler's voluntary dismissal of Casad from her case, Casad remains a Defendant in this consolidated action by virtue of having also been named a Defendant in each of the *Braley*, *Lang*, and *Hayden* complaints. Following argument on the Motions, the Court ordered the tolling agreement and other applicable agreements between Kjessler and Casad to be filed. Order, dated August 16, 2018 [Doc. # 117]. The Kjessler Trial team timely complied. Letter, dated August 17, 2018 [Doc. # 119]. In response, the Susman Firm filed a letter suggesting that the filed agreements are evidence that the Kjessler Trial Team is not best able to represent the interests of the potential class in this case. Letter, dated August 20, 2018 [Doc. # 120]. The Kjessler Trial Team responded. Letter, dated August 22, 2018 [Doc. # 121]. Having carefully reviewed the agreements and the parties' letters, the Court is unpersuaded both by the Susman Firm's pejorative characterization of the filed agreements and its assertion that the filed agreements should disqualify the Kjessler Trial Team from being appointed to a leadership role in this case.

[9] Ahmed, Kurji, and Brandeco are not named as Defendants in Rueckert's complaint.

On February 12, 2018, the United States District Court for the District of Oregon transferred Kjessler's complaint to the United States District Court for the Southern District of Texas.  On February 15, 2018, the Kjessler Plaintiffs and Braley jointly moved to consolidate their respective actions (the "Consolidation Motion") [Doc. # 73].

On March 20, 2018, Plaintiff Hayden filed a complaint in this District alleging the same conduct identified in the *Kjessler*, *Braley*, *Rueckert*, and *Lang* complaints against the same Defendants named in the *Braley* and *Lang* complaints. On April 13, 2018, Hayden filed a notice with this Court indicating his joinder to the Consolidation Motion.

On April 19, 2019, this Court granted the Consolidation Motion.  By Order dated May 14, 2018 [Doc. # 102], the Court directed any Plaintiff seeking appointment of interim lead counsel to represent a putative class in this case under Rule 23(g) of the Federal Rules of Civil Procedure to file a motion seeking that relief on or before May 24, 2018.  On May 24, 2018, the Kjessler Plaintiffs and Hayden timely filed the Motions.

## II.     LEGAL STANDARD

Rule 23(g)(3) of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." FED. R. CIV. P.

8

23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities[.]" MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004). When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A) of the Federal Rules of Civil Procedure ("Rule 23(g)(1)(A)"). *See Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). Rule 23(g)(1)(A) provides that the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class (the "Rule 23(g) factors"). In addition, the Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

"Courts may appoint liaison counsel, lead counsel, trial counsel, or committees of counsel." *In re: Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, 2011 WL 13135156, at *3 (S.D. Tex. Dec. 19, 2011) (Miller, J.).[10]

---

[10]   *See also Freeman on behalf of Tesla, Inc. v. Musk*, 324 F.R.D. 73, 87 (D. Del. 2018) ("'The court, if it sees fit, may appoint one or more attorneys as liaison (continued…)

9

"The court has a great deal of flexibility with regard to appointing representative counsel; for instance, one attorney may serve as lead, liaison, and trial counsel, or the function of lead attorney may be split among several attorneys." *Id.* "However, 'the number of attorneys appointed should not be so large as to defeat the purpose of making such appointments.'" *Id.* (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004)).

## III.  DISCUSSION

The Court begins its analysis of the Motions with the Rule 23 factors. Having reviewed the pending Motions, the declarations, and the attached firm resumes and attorney biographies, the Court concludes that the Kjessler Trial Team and the Susman Firm are similarly situated with respect to the second, third, and fourth Rule 23(g) factors. Their relative experience in handling significant antitrust class actions, their knowledge of the law applicable to this antitrust matter, and the level of resources they are prepared to commit to this case demonstrate that the firms in the competing proposals are excellent and comparable. However, the first Rule 23(g) factor heavily favors the Kjessler Trial Team because the Kjessler Trial Team has done a substantial amount of work to

---

(continued…)
counsel, lead counsel, or trial counsel for the consolidated cases' and may designate responsibilities to the selected counsel.") (quoting *Resnik v. Woertz*, 774 F. Supp. 2d 614, 625 (D. Del. 2011)); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2385 (3d ed. 2008) (same).

investigate potential claims for this case. Specifically, the Kjessler Trial Team reports it has received and reviewed over 450,000 pages of documentary discovery, in addition to receiving other cooperation, from Defendant Casad. There is no indication the Susman Firm has performed a comparably extensive investigation.[11] For example, while Hayden accurately notes that his complaint, unlike the complaints filed by Kjessler and Rueckert, names Brandeco, Ahmed, and Kurji as Defendants, each already had been named Defendants in Braley's and Lang's complaints, which were filed over five months and two months, respectively, before Hayden filed his complaint.[12] Therefore, because of the Kjessler Trial

---

[11] *Compare* Kjessler Motion [Doc. # 103], p. 2 (stating counsel has "conducted three voluntary interviews of industry executives and competitors; investigated defendants, including their litigation histories and pricing structures . . . and tracked and ordered transcripts from the parallel criminal investigations.") *with* Hayden Motion [Doc. # 104], p. 9 ("[The Susman Firm]'s work has included reviewing and analyzing the four plea agreements and related documents filed in this Court; research involving industry and trade group publications that provide information on the history, composition size, structure and participants in the CPP industry"); *compare also* Kjessler Motion, p. 4 (noting Kjessler Trial Team's "coordinated efforts" regarding this case, including discussing "with the Department of Justice several issues regarding discovery (resulting in the amicable intervention of the Department of Justice in this litigation)" and moving to consolidate the various cases against Defendants in this Court) *with* Hayden Motion, p. 9 (noting the Susman firm's efforts to confer "with counsel for all parties in each of the five consolidated cases as well as counsel for the Antitrust Division" and "lead the successful effort to draft, secure agreement by all parties and the United States" a scheduling order [Doc. # 102] in this case).

[12] The Court also notes that, more generally, Hayden's complaint is similar to, and parallels Lang's earlier filed complaint. Hayden asks the Court to largely ignore the fact that he filed his complaint over seven months after Kjessler, the "first filer." Although the Court agrees with Hayden that being the "first filer" is not,

(continued…)

11

P:\ORDERS\11-2018\430MAppoint_2.docx   180831.0819

Team's far more extensive work to date to investigate the claims in this litigation, the Court concludes that the balance of the Rule 23(g) factors favor appointment of the Kjessler Trial Team over the Susman Firm.

The next relevant inquiry is whether there is "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). The salient difference between the Kjessler Trial Team's proposal and Hayden's is the proposed leadership structure for counsel. Whereas the Kjessler Motion seeks appointment of a trial team comprised of five different law firms assigned to serve variously as interim lead counsel, trial counsel, and three steering committee members, the Hayden Motion seeks appointment of only a single firm (the Susman Firm) as interim lead counsel.

Although the Kjessler Plaintiffs make the conclusory assertion that the proposed members of the Kjessler Trial Team "will complement one another

---

(continued…)
itself, dispositive of who is best qualified to serve as lead counsel, the Court is not persuaded that factor bears no weight here given (1) the significant temporal gap between the filing of Kjessler's complaint and Hayden's, and (2) Hayden's failure to include any facts or claims in his complaint that were not included in at least one of the other earlier-filed complaints filed in this case. The cases cited by Hayden are not to the contrary. *See, e.g., Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 357 (E.D. Mich. 2006) ("first-filer" status disregarded where there was an approximately one-month gap between April 7, 2006 first filed complaint and May 9, 2006 competing complaint); *Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 199 (D. Del. 2012) ("first-filer" status disregarded where there was 6-week gap between first and second filed complaints).

allowing them to represent the putative class in the most effective, efficient, and economically sound manner possible,"[13] it is not apparent how this would be so. According to the Manual for Complex Litigation, cited by all movants, committees such as the steering committee proposed by the Kjessler Plaintiffs "are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making."[14]  To date, each Plaintiff in this consolidated action has asserted similar, if not identical wrongful conduct, *i.e.*, the alleged price fixing conspiracy among Defendants, resulting in identical harms, *i.e.*, paying supra-competitive prices for customized promotional products, suffered as a result of that conduct.  The Kjessler Plaintiffs have not articulated cognizable dissimilarities among the current Plaintiffs in this case in terms of their "interests and positions."  Nor is it evident how the interests of other potential plaintiffs, who presumably also will be seeking redress for overpayment for promotional products because of an alleged price fixing conspiracy among Defendants, would be dissimilar.  The Court, at least at this stage of the litigation, is unpersuaded that it is necessary or appropriate for the

---

[13]  Kjessler Motion [Doc. # 103], pp. 5-6.

[14]  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004).  Moreover, "Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses." *Id.*

Kjessler Trial Team to include a steering committee.[15] *See Slipchenko v. Brunel Energy, Inc.*, 2013 WL 4677918, at *15 (S.D. Tex. Aug. 30, 2013) (Rosenthal, J.) ("The court is satisfied that both firms could fairly and adequately represent the class. But the plaintiffs have not explained why appointing both lead and liaison counsel is necessary or appropriate in this relatively small case involving a relatively small number of potential class members. Appointment of liaison counsel may be appropriate in complicated class actions, such as when a putative class has possibly diverging interests or dissimilar claims.").

The Court turns to the Kjessler Trial Team's original request for appointment of "trial counsel" and its post-argument suggestion of appointment of "co-lead counsel." The Court concludes that "trial counsel" *per se* is not necessary or appropriate at this time. The Kjessler Trial Team cites no precedent for a court appointing trial counsel on an interim basis. This case is still in its earliest stages. Although the Court recognizes that a trial-focused litigation strategy is advisable and will aid the efficient pre-trial prosecution of this case, the Kjessler Trial Team has not presented any evidence or authority to suggest that a single, properly qualified interim lead counsel would not be capable of formulating and

---

[15] In reaching this conclusion, the Court does not suggest that any of the firms that the Kjessler Plaintiffs propose for the steering committee are not deserving of an appointment in the appropriate case. Rather, the Court is unpersuaded that a steering committee is needed at all in this litigation.

14

implementing such a strategy. The Court accordingly denies the request for a formal steering committee, separate "trial counsel," or co-lead counsel at this time.

The Court thus has before it competing proposals by well-qualified law firms seeking leadership roles in this case, but no proposal is entirely satisfactory. For reasons explained hereafter, the Court concludes one firm with meaningful and pertinent lead counsel experience and a strategy for achieving necessary efficiencies should be appointed at this time. The Court appoints Warren T. Burns and his firm Burns Charest as interim lead class counsel.

This appointment is warranted for several reasons. First, at oral argument, Mr. Burns was the only counsel who offered the Court substantive, detailed explanations on how he structures and runs his large case litigation teams. Of particular note were Mr. Burns' explanations of his and his firms' billing practices in prior class action litigation, and his representations that he will use those practices, such as not permitting billing for file and correspondence review, and other mechanisms to ensure efficient prosecution of this case. Second, the balance of the Rule 23(g) factors support appointment of Mr. Burns and Burns Charest as sole interim lead counsel. Burns Charest has made extensive efforts in these matters to date, Mr. Burns and his firm have significant experience in antirust class actions, and he and his firm have knowledge of the applicable law. At oral argument, Mr. Burns, on behalf of Burns Charest, committed to dedicating the

15

necessary time, staffing, and monetary resources to see this matter to conclusion and represented to the Court that the firm is prepared to prosecute this case as sole lead counsel.[16] These commitments are important because there simply is no need from a resources perspective to appoint a multi-firm committee or leadership structure, which have inherent inefficiencies. Finally, because this case stems from ongoing criminal proceedings in the United States District Court for the Southern District of Texas and a majority of Defendants are located in the Southern District of Texas, it is likely that much of the evidence in this case, including business records and depositions, will be procured here. Mr. Burns is a Dallas-based attorney and his is the only law firm within the proposed Kjessler Trial Team with a Texas presence. Accordingly, among the members of the proposed Kjessler Trial Team, Burns Charest is uniquely positioned to prosecute this case in the most cost-effective and efficient manner possible. Burns Charest is free, if and when needed, to enlist the assistance of other members of the proposed Kjessler Trial Team to ensure that work already done (or work required in the future) is efficiently

---

[16] At argument Mr. Isquith of Wolf Haldenstein made clear that he himself personally would not be a "field general," *i.e.,* counsel that manages the day to day implementation of the litigation strategy, and that another individual at his firm would assume that role if he was appointed co-lead counsel. In contrast, Mr. Burns appears ready, willing, and able to personally manage the day-to-day progress of this litigation. It is not in the best interest of the potential class in this case to appoint two firms, and functionally three individuals, to the role of co-lead counsel.

16

incorporated into any consolidated complaint and the overall litigation strategy for this case.[17]

In sum, the Court concludes that the interests of the putative class will be well served by appointment of the firm of Burns Charest, led by Warren Burns, as sole interim lead counsel in this Houston-based matter.

## IV.     CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Warren T. Burns, with the firm Burns Charest LLP, is **APPOINTED** as interim lead class counsel.  In all other respects, Plaintiffs Kimberly Kjessler, Klaire Rueckert, and Summer Lang's Motion for Appointment of the Kjessler Trial Team as Interim Class Counsel [Doc. # 103] and Plaintiff Timothy Hayden's Motion to Appoint Susman Godfrey L.L.P. Interim Lead Counsel [Doc. # 104] are **DENIED**.

SIGNED at Houston, Texas, this 31st day of **August 2018**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

[17]    The Court relies on Mr. Burns' representations that any associations will be made with an eye towards maximizing efficiency.