# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

KIMBERLY KJESSLER, KLAIRE
RUECKERT, LAURA BRALEY, TIMOTHY
HAYDEN and SUMMER LANG, individually
and on behalf of all others similarly situated,

Civil Action No. 4:18-cv-0430
(Consolidated)

*Plaintiffs*,

v.

ZAAPPAAZ, INC., AZIM MAKANOJIYA,
NETBRANDS MEDIA CORP.,
MASHNOON AHMED, GENNEX MEDIA,
LLC, BRANDECO, L.L.C., AKIL KURJI,
CUSTOM WRISTBANDS INC., and
CHRISTOPHER ANGELES,

*Defendants.*

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 1

III.    THE SETTLEMENT TERMS ................................................................................ 3

        A.    The Settlement Class ................................................................................... 3

        B.    The Settlement Fund .................................................................................... 4

        C.    Release of Claims ........................................................................................ 5

IV.     THE COURT-APPROVED NOTICE ..................................................................... 5

V.      ARGUMENT ........................................................................................................... 7

        I.    THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR
              CLASS CERTIFICATION. ............................................................................ 7

        A.    The Settlement Class Meets the Requirements of Rule 23(a) ...................... 7

              1.    The Settlement Class is sufficiently numerous. ................................... 7

              2.    There are common questions of law and fact ...................................... 8

              3.    Plaintiffs' claims are typical of the Class. ........................................... 9

              4.    Representative Plaintiffs and their Counsel will fairly and adequately
                    protect the interests of the Class. ..................................................... 10

        B.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ............... 11

              1.    Common questions of law and fact predominate. .............................. 11

              2.    A class action is superior to other available methods of adjudication. ... 12

        II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
              ADEQUATE ................................................................................................ 13

        A.    Standard for Granting Final Approval of the Settlement ............................ 13

        B.    The Proposed Settlement Meets the Standard for Final Approval .............. 13

              1.    The Settlement is absent fraud and collusion. ................................... 14

              2.    The Settlement is adequate in light of the duration, costs, risks, and
                    delay of trial and appeal. .................................................................. 14

              3.    The stage of the proceedings supports approval of the Settlement. ...... 15

              4.    The value of the Settlement outweighs the possibility of future relief. ... 16

              5.    The Settlement represents a fair compromise. ................................... 17

              6.    Settlement Class Members, Class Representatives, and Class Counsel
                    all recommends settlement. .............................................................. 18

VI.     CONCLUSION ..................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................... 7, 11, 12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013) ........................................................................................... 11

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
  133 S. Ct. 1184 (2013) ......................................................................................... 7

*Ayers v. Thompson,*
  358 F.3d 356 (5th Cir. 2004) ......................................................................... 13, 15

*Ballard v. Blue Shield of Sw. Va., Inc.,*
  543 F.2d 1075 (4th Cir. 1976) .............................................................................. 8

*Barrie v. Intervoice-Brite, Inc.,*
  2006 WL 2792199 (N.D. Tex. Sept. 26, 2006) .................................................... 8

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) ................................................................. 13, 16, 17

*DeHoyos v. Allstate Corp.,*
  240 F.R.D. 269 (W.D. Tex. 2007) ....................................................................... 16

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  131 S. Ct. 2179 (2011) ......................................................................................... 7

*Henry v. Cash Today, Inc.,*
  199 F.R.D. 566 (S.D. Tex. 2000) .......................................................................... 7

*In re Combustion, Inc.,*
  968 F. Supp. 1116 (W.D. La. 1997) .................................................................... 17

*In re Corrugated Container Antitrust Litig.,*
  643 F.2d 195 (5th Cir. 1981) ..................................................................... 14, 16, 17

*In re Currency Conversion Fee Antitrust Litig.,*
  263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................................... 14

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.,*
  447 F. Supp. 2d 612 (E.D. La. 2006) .................................................................. 15

*In re NASDAQ Market-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................... 15

*In re Playmobil Antitrust Litig.,*
  35 F. Supp. 2d 231 (E.D.N.Y. 1998) .................................................................... 8

*In re Pool Prod. Distribution Mkt. Antitrust Litig.,*
  310 F.R.D. 300 (E.D. La. 2015) ............................................................................ 5

*In re Scrap Metal Antitrust Litig.,*
  527 F.3d 517 (6th Cir. 2008) .............................................................................. 11

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (1993) ................................................................................. 13

*In re Sugar Indus. Antitrust Litig.*,
  73 F.R.D. 322 (E.D. Pa. 1976) .................................................................... 8

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) .................................................................. 13

*Kelly v. Phiten USA, Inc.*,
  277 F.R.D. 564 (S.D. Iowa 2011) ................................................................ 5

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010 ......................................................... 15

*Lightbourn v. Cnty. of El Paso, Tex.*,
  118 F.3d 421 (5th Cir. 1997) ......................................................................... 9

*Miller v. Republic Nat'l Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977) ....................................................................... 13

*Priceline.com, Inc. v. Silberman*,
  405 F. App'x 532 (2d Cir. 2010) ................................................................. 14

*Priddy v. Edelman*,
  883 F.2d 438 (6th Cir. 1989) ....................................................................... 17

*Rubenstein v. Collins*,
  162 F.R.D. 534 (S.D. Tex. 1995) .................................................................. 8

*Santinac v. Worldwide Labor Support of Illinois, Inc.*,
  2017 WL 1098828 (S.D. Miss. Mar. 23, 2017) ........................................... 16

*Street v. Diamond Offshore Drilling*,
  2001 WL 568111 (E.D. La. May 25, 2001) .................................................. 8

*Watson v. Shell Oil Co.*,
  979 F.2d 1014 (5th Cir. 1992) ...................................................................... 7

*Welsh v. Navy Fed. Credit Union*,
  2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ........................................... 14

**Other Authorities**

Newberg on Class Actions § 3:54 (4th ed. 2010) .......................................... 10, 11

Wright & Miller, Federal Practice and Procedure § 1764 (2014) ....................... 9

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ 1, 7

Fed. R. Civ. P. 23(a) ........................................................................................... 7

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 7

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 9

Fed. R. Civ. P. 23(a)(4) ................................................................... 10, 11

Fed. R. Civ. P. 23(b)(3) ................................................................. 7, 11, 12

Fed. R. Civ. P. 23(b)(3)(D) ................................................................... 12

Fed. R. Civ. P. 23(e) ............................................................................ 13

**Statutes**

15 U.S.C. § 1 ....................................................................................... 2

15 U.S.C. § 3 ....................................................................................... 2

# I. INTRODUCTION

Plaintiffs, individually and on behalf of all others similarly situated, have reached settlements (collectively, the "Settlement") with all Defendants to resolve their claims arising from Defendants' alleged conspiracy to fix prices for customized promotional products ("CPPs") in violation of Section 1 of the Sherman Act. As a result, anyone who purchased customized silicone wristbands or customized pin buttons directly from one or more Defendants since June 1, 2014 will be able to submit claims and benefit from the gross Settlement Fund ($3.5 million minus Court-approved expenses and fees). Plaintiffs' counsel, who have litigated this case in earnest for several years and are highly experienced in antitrust class actions, believe the Settlement represents an excellent result for the class.

There is no dispute that the proposed Settlement satisfies the standards for final approval under Federal Rule of Civil Procedure 23—namely, it reflects mutual compromises informed by diligent discovery efforts; is based on extensive, arm's length negotiations overseen by an experienced mediator; has been strongly endorsed by the Settlement Class Members following a thorough, Court-supervised notice process; and provides the Settlement Class Members with a substantial benefit that compares favorably to the results achieved in similar cases.

Accordingly, Plaintiffs respectfully move the Court for an order granting Plaintiffs' Motion for Final Approval of Class Action Settlement.

# II. BACKGROUND

This is a nationwide direct-purchaser antitrust action arising from a United States Department of Justice ("DOJ") investigation into a conspiracy to fix prices for CPPs that has resulted in the indictments and guilty pleas of four groups of corporate and individual Defendants: (1) Zaappaaz, Inc. and its president Azim Makanojiya (together, "Zaappaaz"); (2) Netbrands Media Corp. and its president Mashnoon Ahmed (together, "Netbrands"); (3) Gennex Media, LLC (aka Brandeco L.L.C.)

and its CEO Akil Kurji (together, "Gennex"); and (4) Custom Wristbands and its CEO Christopher Angeles (together, "Custom Wristbands").

Following the first indictments in August 2017, various plaintiffs filed proposed class actions against Defendants in this district and elsewhere.[1] On April 19, 2018, those actions were consolidated before this Court (Dkt. 102), which appointed Warren T. Burns of Burns Charest LLP as interim lead class counsel. (Dkt. 124).

Plaintiffs filed their Consolidated Amended Class Action Complaint ("CAC") on October 2, 2018. (Dkt. 134). The CAC alleges that from at least June 2014 to June 2016, with anticompetitive effects continuing to the present, Defendants operated a Houston-centric cartel that used secret meetings, covert text messages, and furtive online messaging platforms to fix and maintain the prices they charged for customized promotional products. *Id.* ¶ 4. Plaintiffs, who each purchased CPPs directly from one or more Defendants, allege that Defendants' conduct had the purpose and effect of restraining trade and harming competition resulting in supracompetitive prices paid for customized lanyards, silicon wristbands, and pin buttons in violation of the Sherman Act, 15 U.S.C. §§ 1, 3. *Id.* ¶¶ 10, 122.

On April 24, 2019, the Court dismissed Plaintiffs' claims as to customized lanyards for lack of standing. (Dkt 158). The Court allowed Plaintiffs to go forward with their claims as to customized silicon wristbands and customized pin buttons. *Id.*

The parties have engaged in formal and informal settlement negotiations for numerous months, resulting in four Settlement Agreements (collectively, "the Settlement"), which are nearly identical in key terms. *See* Declaration of Warren T. Burns ("Burns Decl.") at Exhibits 1-A through 1-

---

[1] *Kjessler v. Zaappaaz, Inc., et al.*, No. 3:17-cv-1361 (D. Or.); *Braley v. v. Zaappaaz, Inc., et al.*, No. 17-3064 (S.D. Tex.); *Rueckert v. Zaappaaz, Inc., et al.*, No. 17-3607 (S.D. Tex.); *Lang v. Zaappaaz, Inc., et al.*, No. 18-0044 (S.D. Tex.).

D. The Settlement is the result of vigorous arm's-length negotiations, conducted after extensive factual investigation and legal and economic analyses. Burns Decl. at ¶ 5. By the time Settlement was reached, Plaintiffs' counsel had conducted substantial discovery, including coordinating with the DOJ Antitrust Division during its investigation into the underlying conduct, resulting in the amicable intervention of the DOJ in this litigation. *Id.* at ¶ 3. Counsel conducted voluntary interviews of industry executives and competitors; reviewed hundreds of thousands of pages of documents produced by Defendants; investigated Defendants' litigation histories and pricing structures; and tracked and ordered transcripts from the parallel criminal investigations. *Id.* Plaintiffs' expert economist and his staff were well underway in analyzing the transactional data for purposes of preparing his class certification report. *Id.* Accordingly, the Settlement reflects the strengths and weaknesses both sides viewed with their respective positions, as well as the risks associated with continuing to litigate the case.

Following the Court's Preliminary Approval Order (Dkt. 202), the Settlement Administrator disseminated the Class Notice in accordance with the Court's Orders. No objections to nor requests for exclusion from the Settlement have been received by the Settlement Administrator or Plaintiffs' counsel. Under these circumstances Final Approval of the Settlement should be granted.

## III.    THE SETTLEMENT TERMS

The Settlement provides a substantial monetary payment to the Class and contains other important provisions that will benefit the Class. The key terms are discussed below.

### A.  The Settlement Class

Plaintiffs move the Court to certify a Settlement Class consisting of:

All persons or entities in the United States, including its territories and the District of Columbia, who purchased customized silicone wristbands or customized pin buttons within the United States, including its territories and the District of Columbia, directly from one or more Defendants, or any of their predecessors, subsidiaries, or affiliates thereof, and all federal or state government entities or agencies, between June 1, 2014 and the Execution Date.

Each of the four Settlement Agreements has a different Execution Date. Accordingly, the Class Periods for each Defendant are:

| Defendant | Class Period |
|---|---|
| Netbrands | June 1, 2014 to February 19, 2020 |
| Gennex | June 1, 2014 to January 23, 2020 |
| Custom Wristbands | June 1, 2014 to February 6, 2020 |
| Zaappaaz | June 1, 2014 to June 23, 2020 |

Class Members will include each member of the Settlement Class who does not timely elect to be excluded from the Settlement Class. The parties stipulate that certification of the Settlement Class is for settlement purposes only, and they retain all of their respective objections, arguments, and defenses regarding class certification in the event that the Settlement is not finalized.

### B. The Settlement Fund

Under the terms of the proposed Settlement, each Defendant will pay a settlement amount into an Escrow Account pending the Court's final approval of the Settlement. Defendants have agreed to a total settlement amount of $3,555,000, with each Defendant's payment as follows:

- Gennex will pay $140,000;

- Custom Wristbands will pay $290,000;

- Zaappaaz will pay $625,000; and

- Netbrands will pay $2.5 million.

Each Defendant's payment will be made in four installments. The schedule for each installment is set forth in the Settlement Agreements. *See, e.g.*, Burns Decl. Exhibit 1-A at 7-8 (setting forth Gennex payment plan). These settlement amounts were reached only after Plaintiffs' Counsel and their expert economist conducted detailed analyses of each Defendant's estimated overcharge to class members and each Defendant's financial condition to determine what they reasonably believed each Defendant could pay. These payments are the full amount owed in exchange for the Released Claims. Accordingly, the settlement amount shall be used to pay the notice and administration costs,

attorneys' fees and litigation expenses, incentive awards, and any remaining administration expenses and any other costs of any kind associated with the resolution of the action.

### C. Release of Claims

In exchange for the consideration described above, Plaintiffs have agreed to release Defendants from any and all claims arising out of or resulting from Defendants' alleged unlawful conspiracy, including any unknown claims.

## IV.     THE COURT-APPROVED NOTICE

On July 14, 2020, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, approved the form and content of the proposed Notice, approved the notice process, and appointed Angeion Group, LLC ("Angeion") as Settlement Administrator to distribute the notice pursuant to the terms of the Settlement Agreements. (Dkt. 202).

As provided by the Settlement Agreements, Defendants provided Angeion with the transactional data for most Settlement Class members. *See* Declaration of Markham Sherwood ("Sherwood Decl."), ¶ 3. Angeion then emailed summary notice directly to class members for whom Defendants provided current contact information. At the same time, Angeion launched a digital media campaign to target potential class members who may otherwise be unaware of the settlement. The Notice Program also includes a dedicated settlement website and toll-free telephone line where class members can learn more about their rights and options pursuant to the terms of the Settlement. The direct emailing of notice to class members, along with publication of notice online, is reasonably calculated to apprise class members of the Settlement. *See In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 318 (E.D. La. 2015) (finding email, publication, and online notice to be sufficient); *Kelly v. Phiten USA, Inc.,* 277 F.R.D. 564, 569-570 (S.D. Iowa 2011) (finding email notices and newspaper publications to be sufficient). Angeion ultimately delivered the Notice directly to 505,425 Settlement Class Members. Sherwood Decl., ¶ 3.

The notices defines the class, describes the allegations and pertinent procedural history of this class action, outlines the terms of the proposed Settlement, provides notice of the fairness hearing and how to object to the proposed Settlement, states the maximum amount of attorneys' fees and expenses Plaintiffs' Counsel may request from the proposed Settlement, and explains how class members may obtain additional information. In addition, the notice clearly and concisely informed class members that they may do nothing and be bound by the Settlement; make a fixed amount claim and/or documented amount claim by completing and returning the claim form and be bound by the Settlement; object to the Settlement and be bound by it; or exclude themselves by completing the exclusion form and not be bound by the Settlement.

Following dissemination of the Court-approved Settlement Notice, and as of the date of this filing, Angeion has received only seven requests to be excluded from the proposed settlement. Sherwood Decl., ¶ 14. Nor have Class Counsel received any objections to the proposed settlement or any complaint about the terms of the proposed settlement from any Settlement Class Member. Burns Decl., ¶ 7. Moreover, Class Counsel have not received any communications alerting them to any Settlement Class Member's interest in bringing a separate, individual lawsuit on the theories pled in the matter, or received notice of any such filings. Id.

The actions described above show that the Settlement Class Members' due process rights have been fulfilled because Angeion has made reasonable efforts to provide the Settlement Class Members with notice of the proposed settlement, the Parties have provided the Settlement Class Members with a reasonable period of time to evaluate the proposed settlement, and the Court-approved Notices contained sufficient information to allow Settlement Class Members to make an informed decision about whether to participate in the proposed settlement and access to sufficient procedures for seeking more information, objecting to the proposed settlement, or excluding themselves from the proposed settlement.

# V.    ARGUMENT

To justify class certification, a plaintiff must demonstrate that the requirements of Rule 23 have been met by a preponderance of the evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (internal quotations omitted).[2] As discussed below, the instant case satisfies all the necessary requirements to certify a settlement class and the settlement class and the settlement should be granted final approval.

## I.    THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION.

To qualify for certification, an action must satisfy all provisions of Rule 23(a) and one of the subdivisions of Rule 23(b). *See* Fed. R. Civ. P. 23. The Supreme Court has long recognized that the class action device is particularly suitable for antitrust claims. *See, e.g., Amchem*, 521 U.S. at 624 (Rule 23 (b)(3)'s predominance requirement is "readily met in certain cases alleging . . . violations of antitrust laws"). The claims at issue here are no exception. The proposed Settlement Class satisfies each of the requirements of Rule 23(a) and Rule 23(b)(3).

### A.  The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.  The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *See Watson v. Shell Oil Co.*, 979 F.2d 1014, 1022 (5th Cir. 1992). To meet this requirement, a plaintiff is not required to show the exact number of class members at the time of class certification. *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 2000); *see Street v. Diamond Offshore Drilling*, No.

---

[2] The standard for certifying a settlement class is lower than for a litigation class, since there are no manageability concerns. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Civ.A. 00-1317, 2001 WL 568111, at *4 (E.D. La. May 25, 2001) ("Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than forty members should raise a presumption that joinder is impracticable."); *Rubenstein v. Collins*, 162 F.R.D. 534, 537 (S.D. Tex. 1995) (where "number of class members could extend into the thousands," numerosity is satisfied). In addition, the court may also consider whether members of the proposed class are geographically dispersed. *See Barrie v. Intervoice-Brite, Inc.*, No. 3:01- CV-1071-K, 2006 WL 2792199, at *13 (N.D. Tex. Sept. 26, 2006).

Here, the Settlement Class consists of thousands of persons and entities that purchased CPPs directly from one or more Defendants between June 1, 2014 and the Execution Date. Class members are geographically dispersed throughout the United States, making joinder of all class members impractical. As a result, the numerosity requirement is easily satisfied.

## 2. There are common questions of law and fact.

Here, as in almost every antitrust conspiracy case, the "commonality" requirement of Rule 23(a)(2) is satisfied. Antitrust cases inherently deal with common legal and factual issues. *See, e.g., Ballard v. Blue Shield of Sw. Va., Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976) ("Class actions are frequently maintained in antitrust cases because of the many questions of law and fact that are common to the members of the class."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) (collecting price-fixing cases); *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 335 (E.D. Pa. 1976) ("Antitrust, price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy.").

Here, Plaintiffs and all class members allege the same conduct and advance the same theory as to why that conduct violates the Sherman Act. As a result, common questions of fact and law include:

a. Whether Defendants fixed, maintained, stabilized, or set prices for customized promotional products, including silicone wristbands and pin buttons;

b.  Whether Defendants engaged in conduct that violates the Sherman Antitrust Act, 15 U.S.C. § 1;

c.  Whether Defendants' conduct caused direct purchasers of customized promotional products to pay supracompetitive prices, and thereby, to suffer antitrust injuries; and

d.  The amount of damages Defendants' conduct caused.

Each of the foregoing is a common question related to Plaintiffs' ability to prove Defendants' allegedly illegal conduct and Plaintiffs' resulting injuries constitute a significant part of Plaintiffs' individual claims. Classwide resolution of these issues would resolve elements central to the claims of all plaintiffs at once. Accordingly, the commonality requirement is satisfied.

### 3.  Plaintiffs' claims are typical of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is not demanding, and it focuses on the general similarity of the legal and remedial theories behind plaintiffs' claims. *See Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). Thus, "many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." 7A Wright & Miller, Federal Practice and Procedure § 1764 (2014).

Typicality is satisfied here because the claims of named Plaintiffs and those of the putative class members all arise from the same course of conduct (conspiring to deprive them of market-based prices for certain CPPs) and are based on the same theory of liability under § 1 of the Sherman Act. The representative Plaintiffs, like all class members, allege that they purchased CPPs directly from Defendants during the class period and suffered damages from paying supracompetitive prices. In addition, the representative Plaintiffs are not subject to any unique defenses that would render them atypical class representatives. Accordingly, their claims are typical of the claims of the putative Settlement Class Members.

### 4. Representative Plaintiffs and their Counsel will fairly and adequately protect the interests of the Class.

Under Rule 23(a)(4), a class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This criterion, which aims to protect the rights of absent class members, requires courts to consider the adequacy of the proposed class representatives and the adequacy of class counsel. 4 Newberg on Class Actions § 3:54 (4th ed. 2010). "The central component of class representative adequacy is the absence of conflicts of interest between the proposed representatives and the class." *Id.* In contrast, "[a]dequacy of counsel asks whether the attorneys who seek to represent the class are competent to do the job." *Id.* With regard to the former, a court must consider whether any proposed class representative has an interest "materially adverse to some of the class" and whether he or she "is properly qualified to assume the role of class representative." *Id.* As to the latter requirement, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* at § 3:24.

The Settlement Class meets the requirements of Rule 23(a)(4). First, the interests of the representative Plaintiffs are aligned with the interests of the class, because class members all raise identical claims relating to the same alleged conduct and according to the same theory of damages. All allegedly paid artificially inflated and supracompetitive prices for customized promotional products – prices higher than they would have paid absent Defendants' unlawful conspiracy – they have the same interest in establishing liability, and they all seek damages for the ensuing overcharge. There is no evidence of a conflict of interest between the class members and the representative Plaintiffs, who have actively participated in this litigation from the outset.

In addition, Plaintiffs are represented by seasoned counsel who are thoroughly familiar with class action and antitrust litigation. In fact, this Court impliedly held so when it appointed Warren T. Burns of Burns Charest LLP as Interim Co-Lead Counsel for the proposed class. (Dkt. 124). There is no dispute that counsel for any of the parties are qualified, experienced, and vigorously prosecuted

this class action. Plaintiffs and their counsel have and will continue to fairly and adequately protect the interests of the entire class, in satisfaction of Rule 23(a)(4).

### B. The Settlement Class Meets the Requirements of Rule 23(b)(3)

Where the four prerequisites of Rule 23(a) are met, a class should be certified if the court also "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods . . . ." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

#### 1. Common questions of law and fact predominate.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622–23; *see Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (predominance requires that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class"). In the settlement context, the predominance "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623.

The Supreme Court has recognized that the Rule 23(b)(3) predominance test can be "readily met" in antitrust cases. *Id.* at 624-25; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (predominance is readily met because "proof of the conspiracy is a common question thought to predominate"); Newberg on Class Actions, §18.26, 86-89 (4th Ed. 2002) ("In antitrust suits, the issues of conspiracy, monopolization, and conspiracy to monopolize have been viewed as central issues which satisfy the predominance requirement."). Accordingly, courts regularly certify antitrust class action claims under Rule 23(b)(3), in both litigation and settlement contexts, because issues concerning anticompetitive conspiracy are shared by all class members and these will predominate in any test of liability.

Here, Plaintiffs and all class members allege a single theory of injury: Defendants' alleged anticompetitive conduct led to uniformly inflated CPP prices across the market, and these overcharges were passed to direct purchasers of CPPs. All class members allegedly paid artificially inflated and supracompetitive prices for CPPs – prices higher than they would have paid absent Defendants' alleged unlawful conduct. Plaintiffs and the class members have the same interest in establishing liability, and they all seek damages for the ensuing overcharge and will rely on the same evidence. Thus, Plaintiffs have articulated a single theory of liability—namely, Defendants conspired to raise the prices of CPPs and thus artificially inflated CPP prices—which will be capable of measurement on a class-wide basis. Since the same source of evidence, in support of antitrust violation, impact and damages, would apply to all or nearly all class members' cases, this case warrants class certification. Accordingly, the Settlement Class meets the predominance requirement to certify the class.

### 2. A class action is superior to other available methods of adjudication.

The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternate available methods of adjudication. Fed. R. Civ. P. 23(b)(3). In a settlement-only class certification, the court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem,* 521 U.S. at 620; Fed. R. Civ. P. 23(b)(3)(D). As the Supreme Court has explained:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (internal citation omitted).

This logic applies here, where any interests of class members in individually prosecuting claims are outweighed by the efficiency of the class device. The Settlement Class is comprised mostly of individuals whose claims "will [] be small relative to the costs of maintaining this litigation." *In re*

*Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012). The amount at stake for any individual plaintiff would not make litigating a complex antitrust dispute worth the time, money, or effort. The substantial time and expenses that Class Counsel have already devoted to litigating this action clearly demonstrate that the cost of litigating antitrust claims on an individual basis would be prohibitive. A class action is thus superior to requiring each class member to bring an individual claim.

## II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A. Standard for Granting Final Approval of the Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class wide basis. Approval of a proposed settlement is a matter within the sound discretion of the district court. *See Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004). This discretion should be exercised in the context of a public policy which strongly favors the pretrial settlement of lawsuits. *See Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("[settlements] will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits") (internal quotation omitted). With respect to class actions, the Fifth Circuit has held that "there is an overriding public interest in favor of settlement" because such suits "have a well-deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

Pursuant to Fifth Circuit authority, the court should consider six factors when assessing the fairness of a settlement, including: 1) the existence of fraud or collusion; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the probability of plaintiffs' success on the merits; 5) the range of possible recovery; and 6) the opinions of class counsel, class representative, and absent class members. *See In re Shell Oil Refinery*, 155 F.R.D. 552, 559 (1993). This Court should approve the Parties' proposed settlement because, as discussed below, all of the above factors either weigh in favor of approval.

### B. The Proposed Settlement Meets the Standard for Final Approval

### 1. The Settlement is absent fraud and collusion.

A proposed settlement resulting from arm's length negotiations between experienced, capable counsel is entitled to a presumption of fairness. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) ("Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the negotiation enjoys a presumption of fairness.") (citation omitted). "The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). Moreover, if the terms of the proposed settlement are fair, courts generally will assume the negotiations were proper. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

The Settlement demonstrates all the hallmarks of an arm's length agreement. Plaintiffs' Counsel had extensive knowledge of the case record and the CPP industry, resulting from more than two years of hard-fought litigation. Burns Decl. at ¶¶ 2-4. The parties' settlement negotiations were contentious and took place periodically over the course of many months. *Id.* The settlement agreements with Netbrands and Zaappaaz were reached only after formal mediation sessions with the Hon. Susan Soussan, an experienced mediator. *Id.* at ¶ 4; *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (settlement reached after mediation is entitled to a presumption of arm's length dealings and fairness), *aff'd sub nom Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010). Plaintiffs' Counsel's negotiations were informed by the assistance of their expert economists, who analyzed the transactional data that Defendants produced in this litigation. Burns Decl. at ¶ 2. The high-quality representation on all sides, the lack of any evidence of fraud or collusion, the parties' adverse posture, and the months of negotiation required to produce this Settlement amply demonstrate the absence of fraud or collusion.

### 2. The Settlement is adequate in light of the duration, costs, risks, and delay of trial and appeal.

The Court must next consider the complexity, expense, and likely duration of the litigation. When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened. *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling . . . avoids the risks and burdens of potentially protracted litigation.").

This factor weighs strongly in favor of approving the proposed settlement. Despite substantial efforts already invested in this case, a great deal more time and resources will be required to prosecute it to a verdict. Approval of the Settlement would provide relief while simultaneously freeing class members and Defendants alike from the burdens and uncertainty inherent in additional litigation. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable. . . . [T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."). The degree of uncertainty, along with the complexity, expense, and likely duration of the case, supports final approval of the Settlement.

### 3. The stage of the proceedings supports approval of the Settlement.

This factor requires the Court to look to whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369; *see also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620-21 (E.D. La. 2006) (citation omitted) ("the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed. . . ."). The Fifth Circuit has explicitly rejected the proposition that the parties must always undertake extensive formal discovery and build

a voluminous record before settlement. *Cotton*, 559 F.2d at 1332; *see also In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981). Rather, when the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement. *In re Corrugated Container*, 643 F.2d at 211.

This litigation is ripe for this well-informed, global resolution of the parties' dispute. The parties have ample factual and legal information with which to evaluate the merits of their competing positions and to make a reasoned judgment about the desirability of settling the case on the terms proposed. Perhaps most importantly, Defendants all pled guilty to fixing prices for one or more customized promotional products with one or more of their co-defendants. Moreover, Defendants collectively produced 400,000 pages of documents which Plaintiffs' Counsel reviewed. The investigation, discovery, and analysis that occurred before, during and after settlement negotiations have enabled Counsel and Plaintiffs to adequately assess the legal and factual merits of the claims set out in the CAC. As a result of these efforts, both sides were clearly informed of the strengths and weaknesses of Plaintiffs' claims, both factually and legally, and were able to use this knowledge to engage in hard-fought negotiations.

### 4. The value of the Settlement outweighs the possibility of future relief.

In evaluating the likelihood of success on the merits, "the Court must judge the terms of the proposed settlement against the probability that the class will succeed in obtaining a judgment following a trial on the merits." *Santinac v. Worldwide Labor Support of Illinois, Inc.*, No. 1:15CV25-LG-RHW, 2017 WL 1098828, at *3 (S.D. Miss. Mar. 23, 2017). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172). The Court, however, "must not try the case in the settlement hearings because the very purpose of

the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (quotation omitted).

In the informed opinion of Class Counsel, the Settlement represents an excellent result for the class as compared to the damages that we believe the conspiracy caused the class, and in light of the financial situations of the Defendants. There can be little doubt that neither side could expect a complete victory at trial that would not be subject to the potential risk and delay of appeal. Under the proposed Settlement, the Class will receive the Settlement amount now without that risk. Furthermore, even assuming a favorable verdict and damages were awarded at trial, any resulting recovery would likely not be seen until years from now and would be greatly diminished by the continued costs of litigation. Moreover, Plaintiffs would have to collect any judgment from Defendants, who are not large corporations that are guaranteed to be able to pay a sizeable amount down the road. In light of these considerations, Plaintiffs respectfully submit that certain recovery through settlement is the preferred result.

### 5.   The Settlement represents a fair compromise.

Consistent with the fact that there is litigation risk to both sides, the Settlement provides for compensation somewhere between the best-case scenarios envisioned by either side. "[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981). Thus, the "trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (internal quotation omitted). The "fact that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement." *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *see also In re Combustion, Inc.*, 968 F. Supp. 1116, 1129 (W.D. La. 1997)

("The proposed settlement need only reflect a fair, reasonable, and adequate estimation of the value of the case in view of what might happen at trial.").

The proposed gross Settlement is valued at $3,555,000. The value of the proposed Settlement is fair and reasonable in light of the risks of continued litigation and the time and expense which would be incurred to prosecute the action through a trial.

**6.  Settlement Class Members, Class Representatives, and Class Counsel all recommends settlement.**

There can be little doubt that the Settlement Class Members, the class representatives, and class counsel all agree that the proposed settlement is fair and equitable to the class. Settlement Class Members were given full opportunity to object to the terms of the proposed settlement in any and all respects. As previously described, after Angeion disseminated the Notice to thousands of Settlement Class Members, only seven people asked to be excluded from the class. *See* Sherwood Decl. at ¶ 14. This overwhelming positive response to a Notice that included individualized estimates of each Class Member's damage award demonstrates that the proposed settlement is fair, reasonable and adequate.

## VI.    CONCLUSION

The Parties' proposed settlement was reached only after significant discovery and arm's-length negotiations by experienced lawyers with the assistance of an experienced mediator. It provides a fair result for the Settlement Class Members and has received overwhelming support. The Parties have thoroughly investigated the issues of law and fact presented in this case and believe the proposed settlement is preferable to the continued litigation of Plaintiffs' claims. Nothing in the Parties' negotiations, or in the Settlement Agreement, provides any basis for doubting the fairness of their compromise. For the reasons detailed here, and in the accompanying documents, Plaintiffs respectfully submit that the Parties' proposed settlement is reasonable and deserving of final approval through entry of the proposed Order.

By:     /s/Warren T. Burns
        Warren T. Burns
        TSB# 24053119
        SD Tex #611613
        900 Jackson Street, Suite 500
        Dallas, TX 75202
        Telephone: (469) 904-4550
        Facsimile: (469) 444-5002
        Email: wburns@burnscharest.com

        Christopher J. Cormier (*Pro Hac Vice*)
        4725 Wisconsin Ave. NW, Suite 200
        Washington, D.C. 20016
        Telephone: (202) 577-3977
        Email: ccormier@burnscharest.com

        Korey A. Nelson (*Pro Hac Vice*)
        Lydia A. Wright (*Pro Hac Vice*)
        365 Canal Street, Suite 1170
        New Orleans, LA 70130
        Telephone: (504) 799-2845
        Email: knelson@burnscharest.com
        lwright@burnscharest.com


        ***Class Counsel***

        WOLF HALDENSTEIN
        ADLER FREEMAN & HERZ LLP
        Thomas H. Burt (*Pro Hac Vice*)
        270 Madison Avenue
        New York, New York 10016
        Telephone: (212) 545-4600
        Facsimile: (212) 686-0114
        Email: burt@whafh.com

        Betsy C. Manifold (*Pro Hac Vice*)
        750 B Street, Suite 2770
        San Diego, CA 92101
        Telephone: (619) 239-4599
        Facsimile: (619) 234-4599
        Email: manifold@whafh.com

        Carl V. Malmstrom (*Pro Hac Vice*)
        111 W. Jackson Blvd., Suite 1700
        Chicago, Illinois 60604
        Telephone: (312) 391-5059
        Email: malmstrom@whafh.com

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.
Keith S. Dubanevich
TSB# 06144150
SD Tex# 1451
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
Email: kdubanevich@stollberne.com

LEVIN SEDRAN & BERMAN LLP
Austin Cohen (*Pro Hac Vice*)
Keith J. Verrier (*Pro Hac Vice*)
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Email: acohen@lfsblaw.com
kverrier@lfsblaw.com

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson (*Pro Hac Vice*)
Daniel C. Hedlund (*Pro Hac Vice*)
Michelle J. Looby (*Pro Hac Vice*)
Kaitlyn L. Dennis (*to be submitted Pro Hac Vice*)
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Email: dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
kdennis@gustafsongluek.com

RADICE LAW FIRM, P.C.
John Daniel Radice
34 Sunset Blvd.
Long Beach, NJ 08008
Telephone: (646) 245-8502

HEIM PAYNE CHORUSH LLP
Christopher Michael First
Miranda Yan Jones
1111 Bagby Street, Suite 2100
Houston, TX 77002
Telephone: (713) 221-2000
Facsimile: (713) 22-2021
Email: cfirst@hpcllp.com

mjones@hpcllp.com

GRABAR LAW OFFICE
Joshua H. Grabar
1735 Market Street, Suite 3750
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com

EDELSON & ASSOCIATES LLC
Marc Edelson
3 Terry Drive, Suite 205
Newtown, PA 18940
Telephone: (215) 867-2399
Email: medelson@edelson-law.com

WELTMAN LAW LLC
Stewart Weltman
3841 N. Wayne Ave.
Chicago, Illinois 60613
Telephone: (312.504.1988
Email: sweltman@weltmanlawfirm.com

***Additional Counsel for Plaintiffs and the Proposed Class***